UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

vs.

DONALD ANSON,

        Defendant.

_____

DECISION AND ORDER
04-CR-6180 CJS

**PROCEDURAL HISTORY**

This matter was originally before Magistrate Judge Marian Payson upon a complaint filed against the defendant on June 2, 2004, charging him with the receipt, distribution, and possession of child pornography. Judge Payson appointed a private attorney, Robert Shapiro, to represent the defendant. On July 2, 2004, after being released on pretrial supervision, the defendant failed to appear as directed for a status and preliminary hearing before Judge Payson. On August 20, 2004, he was arrested in the Southern District of Florida. On December 7, 2004, in connection with the charges in the complaint, a three count indictment was returned by a federal grand jury against the defendant, charging him with transporting, receiving, and possessing child pornography. The case was assigned to United States District Court Judge Michael Telesca, who referred the matter to Judge Payson for pre trial proceedings. On December 9, 2004, Judge Payson relieved Mr. Shapiro and appointed Robert Smith of the Federal Public Defender's Office to represent the defendant. On March 22, 2005, a

four count Superceding Indictment was returned against the defendant. On August 16, 2005, a forty-four count second Superceding Indictment was returned against him.

Subsequently, on October 14, 2005, Judge Telesca signed an order transferring the case to this Court. The defendant, who had been returned to the state of Florida, was transported back to this jurisdiction at the end of October 2005. The defendant first appeared before this Court on November 1, 2005, at which time he was arraigned on the second Superceding Indictment. At that time the Court also directed the U.S. Marshals Service, in response to a letter written by the defendant to Judge Payson dated October 26, 2005 (Exhibit A)[1], to return the defendant's legal papers to him if they were in the Marshals' possession.

On November 9, 2005, the Court received a letter from the defendant dated November 4, 2005 (Exhibit B) in which he referred to Mr. Smith's "ineffectiveness as my counsel." The Court responded to the defendant by letter dated November 9, 2005 as follows:

Dear Mr. Anson:

    I am in receipt of your correspondence of November 4, 2005, which by copy of this letter I am providing to Mr. Smith and to Mr. Resnick[2]. I interpret your letter as a request that you be allowed to file a motion for the appointment of new counsel.

    Although I would urge you to discuss with Mr. Smith, who is an experienced and very skilled criminal defense attorney, any issues that may have arisen during the course of his representation of you, I will give you until November 14, 2005, to file your application. I will then rule on it at our next court appearance on November 22, 2005.

---

[1] The Court has compiled an appendix which includes all of the exhibits referenced in this decision which is filed in hard copy, available in the Clerk's Office for appellate review.

[2] Mr. Resnick is the Assistant United States Attorney assigned to this case.

On November 17, 2005, the Court received another letter from the defendant dated November 11, 2005, as well as an apparent motion addressed to Judge Payson dated July 28, 2005 (Exhibit C). In the November 11th letter, the defendant wrote:

> So even though Mr. Smith and I have many differences, it may be in my best interests to wait until after you have ruled on the Motions he has submitted. If you rule in favor of the suppression motion, my problems with Mr. Smith may be moot. Therefore, at this time, I will not burden the court with the delay that would be caused by going all the way back to the pretrial motions with a new lawyer, and addressing (what I see as) Mr. Smith's errors.

Thereafter, at the next court appearance on November 22, 2005, although the Court denied the outstanding motions filed by Mr. Smith on the defendant's behalf, the defendant did not request that Mr. Smith be replaced. Accordingly, the Court scheduled the trial of matter to begin on January 30, 2006.

Then on December 7, 2005, the Court received yet another letter from the defendant, dated December 3, 2005 (Exhibit D), in which the defendant stated that he intended to file a claim against Mr. Smith and the Federal Public Defender's Office pursuant to the "Federal Tort Claim [sic] Act." In response to the defendant's December 3rd letter, the Court scheduled a court appearance for December 13, 2005. At that court appearance, the defendant indicated that he was very unhappy with Mr. Smith and the Court adjourned the matter until December 21, 2005 to give the defendant a chance to speak to Mr. Smith about his concerns.

On December 21, 2005, based upon Mr. Smith's representations that the defendant refused to work with him, the Court relieved Mr. Smith and granted the defendant's request for new counsel. The Court then appointed M. Kirk Okay, the next

lawyer up on the Criminal Justice Act ("CJA") Panel list of assigned counsel, to represent the defendant.[3] However, the defendant asked for the opportunity to retain his own lawyer and the case was adjourned to January 6, 2006, to clarify the status of his representation.

On January 3, 2006, the Court received a letter from the defendant, dated December 29, 2005 (Exhibit E), in which the defendant asked for an extension of time to obtain private counsel. At the January 6, 2006 court appearance, the defendant indicated that his brother was sending attorney Mark Uba $20,000 for a retainer fee, and consequently the Court adjourned the matter to January 13, 2006 for Mr. Uba's appearance. On January 13, 2006, Mr. Uba appeared with the defendant and asked that the trial be adjourned until the end of April or beginning of May. Accordingly, the Court rescheduled the trial to begin on April 24, 2006.

On March 24, 2006, Mr. Uba, on the defendant's behalf, filed a "Motion to Dismiss, or in the alternative for a Bill of Particulars" (Docket # 81), which the Court denied on the record at a court appearance on April 7, 2006. Then, on April 11, 2006, Mr. Uba filed a motion for "Renewal/Reconsideration Regarding Pretrial Motions" (docket # 97). As to the motion to renew/reargue the suppression of statements and physical evidence, the Court denied the request on the record at a court appearance held on April 11, 2006.[4] With respect to the motion to renew/reargue dismissal on

---

[3]The Court explained to the defendant that it does not "hand pick" appointed counsel, but rather has it's chambers contact a ministerial person in the Federal Public Defender's Office, who provides the Court with the next lawyer up on the CJA assignment list.

[4]At the April 11, 2006 court appearance, the issue of the defendant proceeding pro se was raised and the Court brought up the possibility, that in that event, Mr. Uba would remain as stand-by counsel.

speedy trial grounds, the Court denied the request on the record at the court appearance held on April 17, 2006.

Prior to the April 17, 2006 court appearance, and specifically on April 13, 2006, the Court received a letter from Mr. Uba dated April 11, 2006 (Exhibit F), which stated in pertinent part:

> I would also like to address the question of Mr. Anson's decision to discharge me as counsel and proceed to trial pro se. I wish to assure the Court that I addressed the question thoroughly with Mr. Anson before announcing his decision during this afternoon's proceedings. I also wish to provide the Court with more information regarding Mr. Anson's reasoning in anticipation of Monday's court appearance.
>
> As I believe the Court is aware, Mr. Anson's brother Michael mortgaged his home and loaned Mr. Anson money so that Mr. Anson could retain me as counsel. The funds advanced for my retainer essentially constitute Michael Anson's life savings. Michael Anson is very close to retirement. I am fully prepared to continue Mr. Anson's representation at trial on the basis of the financial arrangements previously made. Although I do not believe the presently available funds are sufficient for the entire trial, I have not sought – nor would I seek – to withdraw on that basis. Nevertheless, Mr. Anson has decided that he does not want to see the balance of his brother's life savings expended for his trial. I have addressed with Mr. Anson the risks of proceeding to trial pro se, including the risk that certain issues might not preserved for appeal. Mr. Anson has firmly expressed his intention to proceed pro se despite these risks, however. I have discussed the question with Mr. Anson repeatedly and at length. Although I am quite concerned about the situation, Mr. Anson appears mentally competent and I am confident that he has made a fully-informed decision for legitimate reasons.
>
> This afternoon Your Honor raised the possibility that if Mr. Anson proceeded pro se, I would nevertheless attend the trial as "stand-by" counsel. Mr. Anson appreciates the Court's concern regarding his rights; however he respectfully suggests that this is not a suitable option under the circumstances. If I were to participate as stand-by counsel, I would charge for my time. I anticipate that this time would consume the balance of the retainer funds and still result in the exhaustion of Michael Anson's savings. This is precisely the outcome that Mr. Anson wishes to avoid.

> **Mr. Anson is not requesting assignment of counsel pursuant to the Criminal Justice Act, nor am I requesting discharge because of an inability to pay my fee.** Consequently, the issues addressed in the Second Circuit's recent Parker case are not implicated. The only issue is Mr. Anson's desire to preserve the financial resources of his brother that otherwise would be exhausted by my participation at trial.

(Emphasis added.)

Subsequently at the April 17, 2006 court appearance, the Court addressed the defendant's request to proceed *pro se* to preserve his brother's financial resources. The Court, after advising the defendant of the disadvantages of proceeding *pro se*, determined that he had the right to do so if he chose. However, the Court indicated that, pursuant to *Faretta v. California*, 422 U.S. 806, 834 n. 46 (1974), Mr. Uba would remain on the case as standby counsel for trial. The defendant expressed the concern that the only way he could get the Court to rule on the July 28, 2005 "motion" addressed to Judge Payson, a copy of which he provided to the Court with his November 11, 2005 letter (Exhibit C), and which he had not requested the Court to previously decide, was to go *pro se.* This was apparently occasioned because the defendant's counsel, Mr. Uba, believed that the motion should not be submitted, and because the Court had previously explained to the defendant that, since he was represented by counsel, any motions had to be submitted by his lawyer. In any event, to obviate the problem and to ensure that the defendant was properly represented, the Court considered and denied in all respects the defendant's *pro se* application for dismissal of all counts of the superseding indictment due to ineffective counsel and directed that it be docketed as a motion (Docket # 104). Since the Court ruled on his motion, the defendant decided that he did not want to go *pro se*, but wanted Mr. Uba to continue to represent him. At the

April 17th court appearance, the Court also, based upon a complaint from the defendant, directed the Marshal Service to make sure that any of the defendant's materials that he had with him when he was housed at the Steuben County Jail accompany him back to the Federal Detention Center at Batavia, and to make sure any of his materials that were left in Batavia were returned to him.

On April 22, 2006, Mr. Uba filed another motion on the defendant's behalf to dismiss Counts Three through Forty-three and Count Forty-Four of the second Superceding indictment. The request was granted as to Count Forty-Four, but denied as to Counts Three through Forty-three. On April 24, 2006, the day the trial was to begin, Mr. Uba filed a "Motion for Transfer of Case and Continuance of Trial." The basis of his contention was that, because of two newspaper articles, an impartial jury could not be selected in Rochester. The Court denied the application, prior to jury selection, noting that it was premature, since no attempt had been made at that point to obtain an impartial jury. The Court also observed that it had yet to be determined how many of the prospective jurors had even seen the articles. The Court further granted Mr. Uba leave to renew his application, if he believed it appropriate, based upon the actual selection process.[5] In any event, the Court specifically questioned prospective jurors about pretrial publicity, and excused any of those who had been exposed to pre trial publicity and who could not affirm that they could decide the case solely on the evidence introduced at trial without regard to anything that they may have read, seen, or heard.

---

[5] It is of course noteworthy that Mr. Uba never did renew his application for change of venue.

The trial of the matter was conducted from April 24, 2006 through May 2, 2006. On May 2nd the jury returned its verdict, finding the defendant guilty on Counts One through Forty, Count Forty-two, and Count Forty-three. Sentencing was scheduled for August 8, 2006. However, on May 11, 2006, the Court received a letter from the defendant dated May 5, 2006 (Exhibit G), in which the defendant stated:

> Mr. Uba never conferred with me during the trial, nor the weeks before it. When I made the decision (unfourtuneatly) [sic] not to go pro-se, (something prompted by the loss of most of my legal work) Mr. Uba promised me I would have a say in my defence. [sic]  After that day I only saw Mr. Uba twice.  Once when he came to discuss a plea agreement possibility (which I said I would take as it preserved my appeal rights) and the second time to tell me the U.S. Attorney changed his mind and would limit my appeal options forceing [sic] me to go to trial.  Beyond that I had no discussions with Mr. Uba.  I did at times give him information and lists of questions I wanted asked *, and points I wished him to make. Almost all went unheard.
>
> *We had no computer expert (due to funds) so I wanted Mr. Uba to ask the Gov.'s expert to establish certain facts to help with my defense and most pointedly Mr. Ub's [sic] closing arguement [sic]. I was shocked and surprised when he brought up the "conspeacy [sic] theroy [sic]." I never, ever sugested [sic] any such idea.  In fact most of what he said was a lie. He knew why I went to Florida and it had nothing to do with his theroy [sic] that I feared a gov. conspearcy [sic].  I had asked him if we could talk before his closing and he said we could.  But we did not.  When I heard his rediculas [sic] argument I wanted so badly to get up, object, and tell the jury it was "bull" but I feared upsetting you and did not know if I could. Mr. Uba knew what I wanted him to do, but lied to the jury instead. I'm sorry if I am ranting but the reason is to show why it is now so important that I be allowed to work on my appeals.  I have trusted two others up to now, and have had disasteous [sic] results.  The appeals are my last chance to receive justice.  I do not have a problem with being convicted of things I did, but to be convicted of those that I did not do, well that I can't just take.  Espicialy [sic] when there was proof or at least enough proof to show a very real doubt.

In response to this correspondence from the defendant, the Court scheduled a court appearance for May 15, 2006. As a result of the defendant's allegations against him,

Mr. Uba asked to be relieved, and the Court granted his application.  The Court indicated that it would contact Mr. Okay, whom it had previously appointed  to represent the defendant before he retained Mr. Uba, and ask if he would again accept assignment. Another court appearance was held on May 17, 2006, at which time Mr. Okay accepted the reassignment.

Thereafter, on May 24, 2006, the Court received a letter from the defendant dated May 19, 2006; on June 1, 2006, the Court received another letter from the defendant dated May 26, 2006; on June 7, 2006, the Court received another letter from the defendant dated June 2, 2006; on July 5, 2006, the Court received another letter from the defendant dated June 28, 2006; on July 10, 2006, the Court received another letter from the defendant July 4, 2006; and the Clerk's Office forwarded to the Court yet another letter that  it received from the defendant July 12, 2006 (Exhibit H). In one form or another, in all of these letters the defendant complained about his representation by Mr. Okay. In response to the defendant's complaints, the Court placed the case on its calendar on July 21, 2006. The court deputy's notes for that court appearance read:

> Matter on re: numerous letters received by the Court from the defendant. Defendant is unhappy with the Court, the Marshal, and his attorney.  Court addresses issues raised by the defendant. Mr. Okay says he feels that he can work with Mr. Anson.  He requests that sentencing be adjourned.   Government does not object to an adjournment.   Mr. Okay requests  transcripts of certain witnesses.   Kevin Lyons from Probation states that he can interview defendant with his attorney now.   Mr. Okay requests adjournment of sentence.   Sentence adjourned to 9/15/06 at 3:15 p.m.

However, on August 31, 2006, the Court received a copy of a letter  from the defendant to Mr. Okay dated August 28, 2006, and on September 11, 2006, the Court received from the defendant a letter dated September 7, 2006 (Exhibit I). Both these

letters reflected the defendant's dissatisfaction with Mr. Okay.   The Court held a court appearance on September 13, 2006 to look into the defendant's concerns. After an *in-camera* proceeding with Mr. Okay and the defendant, the Court, erred on the side of caution, relieved Mr. Okay and granted the defendant's request for the appointment of yet another lawyer. The next attorney on the CJA list was James Rizzo. Mr. Rizzo formally accepted the assignment on the record at a court appearance on September 14, 2006. On that date, the Court advised Mr. Rizzo that it had told court reporter Frank LeoGrande to delay preparing trial transcripts of certain witnesses  requested by Mr. Okay in connection with the defendant's outstanding Federal Rule of Criminal Procedure 29 (c) motion, until Mr. Rizzo, as new counsel, determined if he needed those same transcripts or something else. Mr. Rizzo requested a thirty day adjournment to October 16, 2006 to review the file, and the Court granted his request.

On October 16, 2006, Mr. Rizzo asked for additional time to talk to the defendant, and the matter was adjourned to October 23, 2006. At the court appearance on October 23, 2006, in connection with the outstanding Rule 29 (c) motion, Mr. Rizzo indicated that the defendant  asked him  to request the trial testimony of government computer expert witness, James Fottrell, and Special Agent Timothy Kosiniski. The Court granted the request as to Fottrell, but denied the request as to Kosinski, since the defendant apparently wanted Kosinski's testimony to challenge evidence seized pursuant to a search warrant. The Court explained that the search warrant evidence had been ruled admissible in pretrial proceedings, and that, to the extent that the defendant disagreed with the determination, his objection was an issue for appeal, not a Rule 29 (c) application. The matter was then adjourned to January 5, 2007, for

decision on the Rule 29 (c) application and, depending on the outcome, for possible sentencing.

Then on December 20, 2006, the Court received from Chief Judge Richard Arcara a letter that the defendant sent to him dated November 30, 2006 (Exhibit J), in which the defendant asked Judge Arcara, "if it is within your power or influence to have Judge Siragusa removed from my case before my sentencing date of 1/5/07, that you please do so." In regard to this correspondence, the Court held a court appearance on December 22,2006. It became clear that the defendant's attorney, Mr. Rizzo, had not seen the defendant's "motion," and the Court explained to the defendant that, unless he wanted to represent himself, any motion for recusal must be made by counsel. The Court then indicated to Mr. Rizzo that it would give him time to consider the defendant's letter to determine whether he wanted to file, on the defendant's behalf, a formal application to recuse. On January 5, 2007, Mr. Rizzo did in fact file the subject motion.

The Court would also point out that on May 30, 2006, and July 5, 2006, it received two undated letters from the defendant's brother, Michael Anson, complaining about the fee arrangement with Mr. Uba, who, as indicated above, was privately retained. The Court never responded to the letters, nor did the Court ever speak directly with Michael Anson. However, the Court's law clerk, Mark Pedersen, did field a phone call from Michael Anson. A summary of Mr. Pedersen's discussion, as well as Michael Anson's two letters (the first of which includes, as an attachment, a letter from the defendant) are included as Exhibit K of the appendix to this decision.

## STANDARD OF LAW

Title 28 U.S.C. § 455 provides, in relevant part, as follows:

> (a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

As a general matter, recusal motions are committed to the discretion of the judge who is being asked to disqualify himself, who is enjoined to "weigh the policy of promoting public confidence in the judiciary against the possibility that those questioning his impartiality might be seeking to avoid the adverse consequences of his presiding over their case. Litigants are entitled to an unbiased judge, not to a judge of their choosing." *In re Drexel Burnham Lambert, Inc.*, 861 F.2d 1307, 1312 (2d Cir.1988) (citation omitted), *cert. denied sub nom. Milken v. S.E.C.*, 490 U.S. 1102 (1989). Moreover, "[a] judge is as much obliged not to recuse himself when it is not called for as he is obliged to when it is." *Id*. at 1312 (citation omitted). Recusal motions should not be used as strategic devices to judge shop or delay the proceedings. *Lamborn v. Dittmer*, 726 F.Supp. 510, 515 (S.D.N.Y. 1989).

It is well settled that all subsections of § 455 are construed to require a timely application, which our Circuit reads as a "threshold" issue - *i.e.*, one to be evaluated before matters of substance are reached. *Apple v. Jewish Hospital and Medical Center*, 829 F.2d 326, 333 (2d Cir. 1987) (emphasis added). In *U.S. v. Brinkworth*, 68 F.3d 633, 639-40 (2d Cir. 1995), the Second Circuit, relying on *Apple*, 829 F.2d at 333, stated that, in general, one seeking disqualification must do so "at the earliest possible moment after obtaining knowledge of facts demonstrating the basis for such a claim" of disqualification. *Accord, Gil Enters., Inc. v. Delvy*, 79 F.3d 241, 247 (2d Cir.1996). Thus, "[u]ntimeliness

. . . is . . . a failure to seek recusal when it should first have been sought, that is, as soon as the facts on which it is premised are known to the parties." *United States v. Bayless*, 201 F.3d 116, 127 (2d Cir. 2000), *cert. denied*, 529 U.S. 1061 (2000). Moreover, "untimeliness in making a motion for recusal can sometimes constitute the basis for finding an implied waiver." *Id*. The Second Circuit has written that, in the context of ongoing litigation, this timeliness requirement serves two functions:

> First, a prompt application affords the district judge an opportunity to assess the merits of the application before taking any further steps that may be inappropriate for the judge to take. Second, a prompt application avoids the risk that a party is holding back a recusal application as a fall-back position in the event of adverse rulings on pending matters.

*In re Int'l Bus. Mach. Corp.*, 45 F.3d 641, 643 (2d Cir. 1995). In deciding whether a recusal motion is timely, courts must "apply a four-factor test which asks whether: (1) the movant has participated in a substantial manner in trial or pre-trial proceedings; (2) granting the motion would represent a waste of judicial resources; (3) the motion was made after the entry of judgment; and (4) the movant can demonstrate good cause for delay." *Apple*, 829 F.2d at 334 (citations omitted).

If the Court determines that the recusal motion is timely, it must then address the merits of the application. As to that, the relevant inquiry is: "Would a reasonable person, knowing all the facts, conclude that the trial judge's impartiality could reasonably be questioned? Or phrased differently, would an objective, disinterested observer fully informed of the underlying facts, entertain significant doubt that justice would be done absent recusal?" *U.S. v. Bayless*, 201 F.3d at 127; *accord, Diamondstone v. Macaluso*, 148 F.3d 113, 120-21 (2d Cir. 1998). The standard is "designed to promote public

confidence in the impartiality of the judicial process." *In re Drexel Burnham Lambert Inc.*, 861 F.2d at 1313 (quoting H.R. Rep. No. 93-1453, at 5 (1974), reprinted in 1974 U.S.C.C.A.N. 6351, 6354-55). "Nevertheless, the existence of the appearance of impropriety is to be determined not by considering what a straw poll of the only partly informed man-in-the-street would show, but by examining the record facts and the law, and then deciding whether a reasonable person knowing and understanding all the relevant facts would recuse the judge." *U.S. v. Bayless*, 201 F.3d at 126-27 (citation and internal quotations omitted).

Furthermore, although the "extrajudicial source" doctrine applies to recusal motions under 28 U.S.C. § 455(a), "[t]he fact that an opinion held by a judge derives from a source outside judicial proceedings is not a *necessary* condition for 'bias or prejudice' recusal . . . . Nor is it a *sufficient* condition for [such] recusal . . . ." *Liteky v. United States*, 510 U.S. 540, 554 (1994) (emphasis in original). In other words, the "presence of an extrajudicial source [does not] necessarily establish bias, nor [does] the absence of an extrajudicial source necessarily preclude [ ] bias." *Id*. In any event, "[j]udicial rulings alone almost never constitute valid basis for a bias or partiality motion." *Id*. Instead, the judge's rulings should constitute grounds for appeal, not for recusal. *Id*. Further, opinions formed by the judge that are based on the evidence in the case or events occurring during the proceedings do not constitute a basis for recusal "unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Id*.

Further, expressions of impatience, annoyance, dissatisfaction, and even anger, do not establish bias or partiality. *U.S. v. Landerman*, 109 F.3d 1053, 1066 (5th Cir. 1997).

## ANALYSIS

Although the Court believes that based upon the background of this case, as detailed under the Procedural History, it would be appropriate to deny the defendant's application on timeliness grounds, the Court will proceed to consider the merits of the motion. In that regard, at the outset, it should be noted that the primary basis for the defendant's motion to recuse is his dissatisfaction with rulings that the Court has made. As the defendant states in his affidavit in support of his motion to recuse, the "Court has during the conduct of this matter rendered many rulings which make confidence in the Court questionable, and from my perspective, prejudiced . . . ." (Aff. in Supp. of Recusal [#148] ¶ 2.) As indicated above, it is well settled that judicial rulings almost never constitute a valid basis for recusal based upon bias or impartiality. *Liteky v. United States*, 510 U.S. at 554. In any event, the Court will address the defendant's specific contentions.

First, the defendant complains:

> At one point in the Testimony of Timothy Kosinski, the lead agent in the case, who testified about the search of my hard drive, the prosecutor unsuccessfully attempted to admit into evidence certain CDs ROM by asking Agent Kosinski if they were in the same condition as when he first received them, but the Court sustained an objection by my attorney. The Judge then cleared the court room and explained to the prosecutor the requirements at law of securing the admissibility of these CDs ROM, and, word for word, what the testimony had to be.

(Aff. in Supp. of Recusal [#148] ¶ 2 (a).) The exchange to which the defendant refers is included as Exhibit L in the appendix filed with the Clerk of the Court. The Court was making an evidentiary ruling outside the presence of the jury. Clearly, such evidentiary

determination does not support recusal.

Second, the defendant complains:

The Court refused to remove Mr. Smith for a period of about 10 months though I had complained repeatedly that Smith had mishandled pre-trial motions, and when Mr. Uba, my retained attorney, attempted to file added motions, the Court refused to consider them.

i.      For example, in the original motions, Mr. Smith refused to bring up a violation of the speedy trial act that occurred as a result of the faulty application of the "ends of justice" doctrine for extending the time to file motions that occurred before he was assigned to the case. Mr. Smith more than Mr. Shapiro (my first attorney) repeatedly asked for adjournments to consult with me, but cited his busy trial schedule as a reason for extending the clock for long periods of time. Then, in spite of having obtained long extensions, these attorneys failed to come see me at all. I repeatedly told both attorneys that I had law that indicated that his busy trial schedule was not adequate reason for extending the clock under §3161, but he refused to bring it up. When Mr. Uba attempted to contest the new issue this Court refused to consider the motion.

ii.     I have often argued with Judge Siragusa and am concerned that the Court has become angered to the point that it cannot make an objective decision. I have been told by my brother that he has called the Court and has argued with the Court about the inability to allow Mr. Uba CJA compensation. My lawyer has advised me that it might be wise to not anger the judge, but I am firmly of the opinion that he cannot get any angrier than he already is.

iii.    More often than not however, the Judge has not allowed me to speak, even if the issue is the inadequate representation by my then attorney. I am concerned that the Court is rushing to judgment.

(Aff. in Supp. of Recusal [#148] ¶ 2 (b) (i-iii).) As is evident from the Procedural History, detailed above, the defendant's claim that the Court failed to remove Mr. Smith for a period of ten months is untrue. As of November 22, 2005, the defendant was not asking that Mr. Smith be replaced. Subsequently, Mr. Smith was relieved on December 21, 2005. Additionally, the defendant's included allegations under this point, about the Court

becoming angry at him and not allowing him to speak, are also without any merit. The Court believes the record supports the conclusion that the Court has been very patient with the defendant and has given him numerous opportunities to speak on the record. Moreover, the defendant's allegation that the Court argued with his brother is not true. As explained under Procedural History, the Court refused to speak with Michael Anson about his fee dispute with Mr. Uba.

Third, the defendant complains:

> I asked Messrs. Uba, Okai [sic] and Rizzo to obtain transcripts of proceedings at the earliest time, so that I may begin preparation of my appeal, and each has asked the Court to allow time to obtain the transcripts. I began asking at the time of the verdict, but have not obtained them to this point in time because the Court will not allow it.

(Aff. in Supp. of Recusal [#148] ¶ 2 (c).) As discussed under Procedural History, Mr. Rizzo, the defendant's counsel, requested the transcripts of two trial witness, James Fottrell, and Special Agent Timothy Kosiniski. In denying the request for Kosiniski, the Court explained the reason as to why it was needed, while relevant on appeal, was not relevant on a Rule 29 (c) application.

Fourth, the defendant complains:

> Mr. Uba also attempted to bring up the violation of an order of the Court to perform a hard drive search within 60 days of the issuance of the warrant. This time line was violated and Mr. Smith brought it up to the Court in motions only as a violation of a court order. He did not bring it up as a violation of a fourth amendment unreasonable search issue, however. Mr. Uba attempted to argue this issue before this Court but the court refused to hear the motion. It appeared as if the Court were interested in pushing the case through trial and not in seeing justice served.

(Aff. in Supp. of Recusal [#148] ¶ 2 (d).) The defendant, of course, has a right to raise denial of suppression as a point on appeal, but such adverse ruling obviously does not

support recusal.

> Fifth, the defendant complains:
>
> The Court refused to grant a motion for a change of venue based upon pre trial front page articles, multi page articles over several days in the local news papers, TV coverage and Internet postings. Rather the Judge commented in the news that a case of this nature had not been tried in this jurisdiction in a long time.

(Aff. in Supp. of Recusal [#148] ¶ 2 (e).) As explained under Procedural History, the application was premature and never renewed during the actual selection process. Furthermore, to the extent that the Court mentioned, on the record, in discussions of necessary trial preparations, including requisite technology, that a case of this nature had not been tried in recent memory, it is hardly a basis for recusal.

> Sixth, the defendant complains:
>
> When Mr. Uba was retained, about two months before the trial, he asked for a time extension to prepare the trial and for time to pass so that the publicity would settle, but the Court refused these extensions because Mr. Smith had already taken too long to prepare.

(Aff. in Supp. of Recusal [#148] ¶ 2 (f).) This allegation is meritless. As indicated above under Procedural History, when Mr. Uba entered the case, he asked for a trial date in late April or early May of 2006. In accordance with Mr. Uba's request, the Court scheduled the trial to commence on April 24, 2006.

> Seventh, the defendant complains:
>
> The Court did nothing when I complained on two separate occasions that I had been deprived at a critical time (three weeks before trial) of pencil, paper and my legal materials. The Court did nothing even tough [sic] I desperately needed the items to prepare for trial. I have not recovered much of that material to this day. It consisted of about 40 lb. of notes, correspondence with my lawyer, case law and even possible evidence for trial, being letters from Walter Rigato (The man whom I accused of having uploaded the material and who also stole $50,000 and a car from me)

admitting that he used my computer to engage in pornographic activity.

(Aff. in Supp. of Recusal [#148] ¶ 2 (g).) As described under Procedural History, on November 1, 2005, the first time the defendant appeared before the Court, the Court, directed the Marshals Service to return to defendant any of his legal papers in its possession. Then on April 17, 2006, the Court directed the Marshals Service to make sure that any of the defendant's materials that he had at the Steuben County Jail accompany him back to the Federal Detention Facility at Batavia, and to make sure any of his papers left in Batavia were returned to him.

>Eighth, the defendant complains:
>
>The Court refused to allow Mr. Uba to withdraw from the case or to obtain CJA payments for his services after exhaustion of my retainer, causing him to refuse to obtain computer experts as witnesses and to rush the trial to completion.

(Aff. in Supp. of Recusal [#148] ¶ 2 (g).) This allegation has no merit. Since Mr. Uba specifically stated in his April 11, 2006 letter to the Court,

>I am fully prepared to continue Mr. Anson's representation at trial on the basis of the financial arrangements previously made. Although I do not believe the presently available funds are sufficient for the entire trial, I have not sought – nor would I seek – to withdraw on that basis.

(Exhibit F.)

>Ninth, the defendant complains:
>
>Mr. Uba and his successor, Mr. Okay, both requested, on the record, that transcripts be supplied for adequate representation on a 29 (c) motion, but the Court refused to allow them to order it and told them that they had to wait until the sentence occurred. There is some authority that the transcript can be ordered without the judge's permission as soon as the verdict is passed.

(Aff. in Supp. of Recusal [#148] ¶ 2 (i).)   This contention is merely a restatement of

the defendant's complaint set forth above.

Finally, the defendant complains:

> At the Charge to the Jury, the Court notified the jury that they should not consider the fact that I was incarcerated, in spite of the fact that the jury is not to be informed of that fact.
>
> 1.   I have consulted with Mr. Rizzo who informs me that the Court usually asks counsel if they wish to have that charge read, but do not remember my lawyer having consented to it.

(Aff. in Supp. of Recusal [#148] ¶ 2 (j).) Prior to summations, the Court provided to the defendant's trial counsel, Mr. Uba, a copy of the Court's proposed instructions. Included was this language:

> Furthermore, the fact that the defendant is in custody has no bearing on your determination of his guilt or non-guilt and must not be considered by you in any way in reaching your decision in this case.

Mr. Uba did not object.

## CONCLUSION

Accordingly, defendant's motion to recuse  (Docket # 148) is denied in all respects.

It is So Ordered.

DATED: January 10, 2007
          Rochester, New York

                              ENTER.


                              /s/ Charles J. Siragusa
                              CHARLES J. SIRAGUSA
                              United States District Court