UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

                                                      AMENDED
                                        DECISION AND ORDER
      vs.                                      04-CR-6180

DONALD ANSON,
                Defendant.

_____

The Court must first rule on the objections the defendant has made to the Pre-Sentence Investigation Report ("PSR"). In that regard, pursuant to Federal Rule of Criminal Procedure 32 (i)(A) & (B), the Court may accept any undisputed portion of the PSR as a finding of fact; and must – for any disputed portion of the PSR or other controverted matter – rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the Court will not consider the matter in sentencing.

As to objections, it is well settled that to rule against the defendant, the Court must find that the government has established the disputed allegations in the PSR by a preponderance of the evidence. *United States v. Cordoba-Murgas*, 233 F. 3d 704, 708-10 (2d Cir. 2000). This remains the case even though the Sentencing Guidelines have been determined to be advisory, rather than mandatory. *United States v. Booker*, 543 U.S. 220 (2005); *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005); *United States. v. Gonzalez,* 407 F.3d 118 (2d Cir. 2005). In other words, the Court, within the

advisory Guideline scheme, may continue to make factual findings resulting in enhancements to a defendant's offense level, based upon the preponderance of evidence standard, as long as the facts found by the Court, "do not increase the penalty beyond the prescribed statutory maximum sentence or trigger a mandatory minimum sentence that simultaneously raises a corresponding maximum." *United States v. Sheikh*, 433 F.3d 905, 905 - 06 (2d Cir. 2006).

In his Sentencing Memorandum ("Memorandum") (Docket # 145 ) in ¶ ¶ 8 -12, under the heading of "Factual allegations Defendant Contests," Mr. Rizzo, on behalf of the defendant states:

8. It is difficult as counsel, without access to the record, to determine what proof the Government actually adduced at trial. Counsel has had to rely heavily on the representations of Mr. Anson and makes some challenges listed below respectfully.

9. Contrary to the record on the second sheet of the PSR, Mr. Anson believes that the Illinois State Police may have filed a detainer against him; he indicates that he wishes to be honest about this point.

10. Mr. Anson denies the intent to abscond listed under page numbered 4, ¶ 11 and ¶ 22, page numbered 6.

11. Mr. Anson denies that "in one posting to OSC, Anson offered to trade the password to a child pornography site for .. [sic] pictures of child pornography ...". He insists that he traded his password for access to other sites only. As such there is some question as to whether he traded pornography for something of value.

12. On page 5 ¶ 19 the PSR characterizes the CDs ROM [sic] as containing "thousands of images of child pornography". The next paragraph indicates that the jury was "shown 10 images from each of the CDs ROM. Assuming 39 CDS, with 10 images each, the jury was shown 390 images, presumably.

Mr. Rizzo further states in ¶¶ 13-16, under the heading "Contest of level increases:"

> 13. It is not known what proof indicated that any children were under the age of 12, and the Defense questions the two level increase of ¶ 26 on page 6
>
> 14. The Defense also challenges the five level increase under ¶ 27, per §2G2.2(b)(B). The evidence adduced through the witness Fottrell indicated only that a password was exchanged for other passwords. The defense contends that this is outside the purview of the "receipt of pornography for a thing of value". It was also not shown that the passwords received were from pay sites as opposed to free sites, and the government has failed in its burden with respect to this enhancement under <u>Blakely v. Washington</u>,124 S. Ct. 2531 (2004) and <u>United States v. Booker</u>, 125 S. Ct. 738 (2005).
>
> 15. The Defendant opposes the ¶ 30 five level increase. It is not known whether more than 600 images of child pornography were proven by the government to the jury, or are apparent from viewing the images. It does not appear 600 images were found by the jury, and this five level increase is opposed. Without specific findings by the jury, the principal that the jury stands between the Defendant and his sentence is enunciated by <u>Booker</u>, 750, supra.
>
> 16. The enhancements of the guidelines increases the offense level 17 (5 to10 years) to a level 37 offense (lifetime incarceration) without specific findings by the jury, for a first time offender.

The Court will consider in turn each of what amount to four objections on the defendant's part. The defendant's first objection (set forth in ¶ 10 of his Memorandum) pertains to ¶ 11 and ¶ 22 of the PSR. The defendant disputes the PSR's recommendation that he should be assessed a two-point increase in his offense level for Obstruction of Justice. In that regard, U.S.S.G.. § 3C1.1 reads:

> If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels.

Applicaton Note #4 to U.S.S.G.. § 3C1.1 indicates

> 4. Examples of Covered Conduct.--The following is a non-exhaustive list of examples of the types of conduct to which this adjustment applies:
>
> ***
> (e) escaping or attempting to escape from custody before trial or sentencing; **or willfully failing to appear, as ordered, for a judicial proceeding;**

(U.S.S.G. § 3C1.1 (11/1/06).) Emphasis added.

Paragraph 22 of the PSR states:

> The defendant was arrested on June 2, 2004 for receiving and possessing child pornography. As referenced earlier, on July 2, 2004, the defendant failed to appear at his status conference and preliminary hearing. An arrest warrant was issued and the defendant was arrested in Florida on August 2, 2004. Absconding from supervision and failing to appear at a court proceeding constitutes obstruction of justice.

In her Report and Recommendation ("R & R") (Docket #51), filed on August 22, 2005,

Magistrate Judge Payson found:

> Anson failed to appear as required for his next court appearance (Docket # 4) and was arrested a month later in Florida on July 30, 2004. (Docket # 6). Because Anson willfully failed to appear for the July 2, 2004 court appearance, and his whereabouts were unknown until he was apprehended in Florida, the time between July 2, 2004 and August 2, 2004 (the date of his initial appearance in connection with his Florida arrest) is excluded from the Speedy Trial Act computations under 18 U.S.C. § 3161(h)(3)(A). *See* 18 U.S.C. § 3161(h)(3)(A) ("[a]ny period of delay resulting from the absence or unavailability of the defendant . . . shall be excluded in computing the time within which . . . an indictment must be filed"); 18 U.S.C. § 3161(h)(3)(B) ("a defendant . . . shall be considered absent when his whereabouts were unknown and, in addition, he is attempting to avoid apprehension or prosecution"; *United States v. Love*, 859 F. Supp. 725, 736 (S.D.N.Y. 1994) (excluding 27-month period from Speedy Trial calculation.

(R & R, p. 20.) In his Decision & Order ("D & O") (Docket # 55), filed on October 12,

2005, adopting Judge Payson's R & R, Judge Telesca wrote:

> Although defendant acknowledges that he fled the jurisdiction and failed to appear for scheduled court appearances during that 188 day delay, he contends that his absence did not prevent the government from moving forward with an indictment, and therefore his absence was not the cause of the delay.

(D & O, pp. 7-8.) The Court finds beyond a reasonable doubt, let alone by a preponderance of evidence, that the defendant should be assessed a two-point increase in his offense level for Obstruction of Justice based upon his failure to appear, and consequently the defendant's objection in this regard is denied.

Significantly, there is another basis, apart from the defendant's failure to appear, on which the PSR bases its recommendation for a two-point enhancement for Obstruction of Justice. In addition to the language quoted above, ¶ 22 of the PSR goes on to state:

> In addition, the defendant testified under oath at a suppression hearing that the statement he gave to agents at the time of his arrest was coerced and was not given voluntarily. The statement was found to be given voluntarily by the court and it was admitted into evidence at trial.

The defendant does not object to this these statements in the PSR, which support a two-point enhancement under USSG § 3C1.1. In any event, even had the defendant objected, the Court would find that a two point upward adjustment of the defendant's offense level based upon his commission of perjury at his suppression hearing is appropriate. Sentencing Guideline § 3C1.1 directs a sentencing court to increase a defendant's offense level by two levels if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense." The commentary to this

section states that perjury can serve as the basis for an obstruction-of-justice enhancement. U.S.S.G. § 3C1.1, Appl. Note 4(b).

> In order to enhance a defendant's sentence for obstruction of justice [through perjury at trial], the sentencing court must determine by clear and convincing evidence that the defendant gave false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory

*United States v. Kelly*, 147 F.3d 172, 178 (2d Cir.1998). Based upon its review of the suppression hearing testimony of Special Agent Timothy Kosinski of Immigration and Customs Enforcement ("ICE") and Special Agent Brian Korzak, also of ICE, as compared to the testimony of the defendant, the Court finds by clear and convincing evidence that the defendant gave false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory.

At issue at the suppression hearing were statements, including a signed statement that the defendant purportedly gave. In an affidavit attached as Exhibit A to the defendant's Reply to the Government's Resp. (Docket # 36), he stated in ¶ 3, page 2, "Furthermore, when the police entered my home they barged into my house pinning me against the wall." Then in ¶ 4 of this affidavit, the defendant stated:

> The police questioned me toward the end of the their search. The police lied to me during this interrogation, telling me that I would be free to leave as soon as I signed a paper. A document was placed before me and I was told to initial various areas of the document . . . . Furthermore, the police told me what to write, again saying that I would be free to leave as soon as I finished writing and signing a document.

(Reply to the Government's Resp., p. 2, ¶ 4.) At the suppression hearing, the defendant testified in accordance with the allegations in ¶ 3 and ¶ 4 of his affidavit. (Hr'g Tr., May

10, 2005 p. 10, lines 4-19; p. 24, lines 3-16; p. 25, lines 20-25; p. 28, lines 8-19.) The defendant's allegations in his affidavit, as well as his testimony in support of those allegations, were directly at odds with the testimony of Special Agents Kosinski and Korzak. (Hr'g Tr., Apr. 13, 2005, p. 9, lines 22-25 and p. 10, line; p. 7, lines 4-15; p. 16, lines 9-16; p. 74, lines 4-8; p. 24, lines 2-6; p. 74, lines 23-24 and p. 75, lines 1-6; p. 24, lines 2-15; p. 76, lines 2-13.) In her R & R, recommending that the defendant's motion to suppress statements be denied, Magistrate Judge Payson stated:

> On the record before me, I find that a reasonable person in Anson's position – that is, someone confronted with a search warrant for his residence who is repeatedly told by the searching officers that he is free to leave – would not have believed himself to be in custody. Rather, the reasonable person would have believed he was free to leave the police encounter.  *See United States v. Newton*, 369 F.3d at 672; *United States v. Benedict*, 104 F. Supp. 2d 175, 178-79 (W.D.N.Y. 2000) (statements made by defendant during execution of search warrant deemed admissible despite absence of Miranda warnings because defendant not in custody); *see also United States v. Mitchell*, 966 F.2d 92, 99 (2d Cir. 1992) ("It is similarly clear that [defendant] was not in custody during his interview. The entire interview occurred in the familiar surroundings of [his] home."); *United States v. Salvo*, 133 F.3d 943, 950-53 (6th Cir.) (defendant not in custody during questioning in his college dormitory concerning possession of child pornography), *cert. denied*, 523 U.S. 1122 (1998); *United States v. Dornhofer*, 859 F.2d 1195, 1200) (4th Cir. 1988) (questioning of defendant during search of his apartment for pornography did not constitute "custody"), *cert. denied*, 490 U.S. 1005 (1989).
>
> Accordingly, I find that at the time Anson made the challenged statements, he was not subjected to custodial interrogation and thus a reading of the Miranda warnings was not required.  It is therefore my recommendation that Anson's motion to suppress statements be denied.

(R & R, p. 18.) Subsequently, Judge Telesca, in his D & O, adopted Judge Payson's recommendation and denied the defendant's application to suppress statements. (D & O, at 7.)

The defendant's second objection (set forth in ¶ 11 and ¶ 14 of his Memorandum)

relates to ¶ 27 of the PSR which recommends that the defendant's offense level be increased by five, pursuant to U.S.S.G. § 2G2.2(b)(2)(B). This section reads, "Distribution for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain, increase by 5 levels." With respect to this enhancement, the Second Circuit has explained:

> Thus, the key word in this case is "expectation." That word has been defined as "the act or action of looking forward: anticipation." Webster's Third New International Dictionary 799 (1976); *accord* Black's Law Dictionary 598 (7th ed.1999). Accordingly, based on the ordinary meaning of the word "expectation," U.S.S.G. § 2G2.2(b)(2)(B)'s five-level enhancement applies when a defendant distributes child pornography in anticipation of, or while reasonably believing in the possibility of, the receipt of a thing of value.

*United States v. Maneri*, 353 F.3d 165, 169 (2d Cir.2003). In this case the jury found beyond a reasonable doubt that the defendant uploaded images of child pornography to the Online Sharing Community, a website which promoted the trading and sharing of child pornography images. The evidence also established beyond a reasonable doubt that the defendant downloaded images of child pornography from this same website. Not only was this established through the trial testimony of the government's forensic expert, James Fotrell, but the defendant admitted to both uploading and downloading images of child pornography to and from the Online Sharing Community in his signed statement, received into evidence at trial as Exhibit # 90. In addition, the government introduced, as Exhibit # 71, a posting by the defendant on the Online Sharing Community Website, in which he stated, "I have a pass for Eclectic boys good till 8/16 will trade for boy sites." In another posting, introduced as Exhibit #72, the defendant stated, "Glad to see some of the posters who got me hooked on this site returning. We

deffinatly [*sic*] need more boy picts!!" Considering this specific evidence in the context of the totality of evidence introduced at trial, the Court finds by a preponderance of evidence that the five level increase in the defendant's offense level, pursuant to U.S.S.G. § 2G2.2(b)(2)(B) applies, and consequently the defendant's objection to this enhancement is denied.

The defendant's third objection (set forth in ¶ 12 and ¶ 15 of his Memorandum) pertains to the recommendation in ¶ 30 of the PSR that his offense level be increased by five levels, pursuant to U.S.S.G. § 2G2.2(b)(6)(D), since his offense involved more than six hundred images of child pornography. Thirty-nine CDs seized from the defendant's residence were received into evidence at trial. Additionally, all the images on those thirty-nine CDs were received into evidence as Exhibits 1(b), 2(b), 3(b), 4(b), 5(b), 6(b), 7(b), 9(b), 10(b), 11(b), 12(b), 13(b), 14(b), 15(b), 16(b), 17(b), 18(b), 19(b), 20(b), 21(b), 22(b), 23(b), 24(b), 25(b), 26(b), 27(b), 29(b), 30(b), 31(b), 32(b), 33(b), 34(b), 35(b), 36(b),37(b), 38(b), 39(b), 40(b), and 41(b). Furthermore, images on the defendant's computer, which was seized as well, were also introduced at trial as Exhibit # 50(b). Based upon these trial exhibits, the Court finds, by a preponderance of evidence, that the images of child pornography possessed by the defendant totaled approximately 90,000, and that the five level enhancement of U.S.S.G. § 2G2.2(b)(6)(D) applies. Therefore, the defendant's objection in this regard is denied.

Finally, the defendant objects (as set forth in ¶ 13 of his Memorandum) to the recommendation in ¶ 26 of the PSR to a two-level increase in his offense level pursuant to U.S.S.G. § 2G2..2(b)(1) since the material involved a minor under the age of twelve. However, the Court finds by a preponderance of evidence that it was obvious from an

inspection of several of the images, that the minors depicted were under the age of 12. Thus, the Court determines that the two level increase pursuant to U.S.S.G. § 2G2..2(b)(1) applies and the defendant's objection to this enhancement is denied.

## CONCLUSION

Accordingly, the defendant's objections to the PSR are denied.


IT IS SO ORDERED.

DATED:      January 19, 2007
            Rochester, New York

                              ENTER.


                              /s/ Charles J. Siragusa
                              CHARLES J. SIRAGUSA
                              United States District Judge